IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARIE CARASTRO,                          )
                                         )
      Plaintiff,                      )
                                         )
v.                                       )       CASE NO.  2:18CV800-ECM
                                         )              (wo)
ALABAMA DEPARTMENT OF PUBLIC )
HEALTH, *et al.*,                        )
                                         )
      Defendants.                     )

## MEMORANDUM OPINION and ORDER

Now pending before the Court is a motion for summary judgment filed by the Alabama Department of Public Health (ADPH), Dennis Blair ("Blair"), Lisa Pezent ("Pezent"), and Mia Sadler ("Sadler")(doc. 58), and a motion to strike (doc. 64).

The Plaintiff, Marie Carastro ("Carastro"), filed a third amended complaint, with leave of Court, in which she brought a claim in count one for violation of the Age Discrimination in Employment Act (ADEA) against Blair, Sadler, and Pezent in their official capacities for equitable and injunctive relief. (Doc. 37 at 10).[1]  Other claims asserted in the third amended complaint were dismissed by Order of this Court. (Doc. 43 at 10).

Upon consideration of the briefs, the record, and the applicable law, and for the reasons that follow, the motion for summary judgment is due to be GRANTED, and the

---

[1] Carastro initially sought damages against individual defendants for violation of the ADEA (doc. 1), but amended her complaint to seek injunctive and equitable relief against Blair, Sadler, and Pezent (doc. 18 at 11) and (doc. 37 at 10).

motion to strike is due to be GRANTED in part and DENIED in part to the extent that the Court will sustain the Defendants' objections to some of Carastro's evidentiary submissions.

## I.     JURISDICTION

The Court exercises subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331.  Personal jurisdiction and venue are uncontested.

## II.     LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED.R.CIV.P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

### III.   FACTS

Carastro was born in 1929, and at the time of her termination from the ADPH in 2018, was 89 years old. Carastro was hired by ADPH as a Licensure and Certification Surveyor in 1989. In that position, Carastro was tasked with surveying nursing facilities for compliance with state and federal regulations. Carastro was typically responsible for surveying dietary regulations. Blaire, Sadler, and Pezent were all supervisors of Carastro.

The Defendants present evidence that a survey of skilled nursing facilities must be conducted in accordance with procedures established by the U.S. Centers for Medicare and Medicaid Services and the requirements of ADPH. Surveyors are required to demonstrate high standards of personal integrity, adhere to high moral and ethical standards, and act in a professional and ethical manner. (Doc. 59-1). If a survey team does not complete its work, one surveyor may need to complete that work and then meet up with the team later. (Doc. 59-1 at 9). If the ADPH receives a formal complaint on a surveyor, it notifies the individual and asks the individual to address the charges. (*Id.* at 4). ADPH has a progressive discipline policy from warning, to reprimand, to suspension, and then termination. (Doc. 59-1 at 8).

Carastro received disciplinary actions, including an April 2009 written warning for work performance issues, a July 2012 written warning arising from complaints at two facilities, and a February 2014 written reprimand for inappropriate comments about facility staff incompetency. (Doc. 59-1 at 7).

In 2017, Carastro received a letter from State Health Officer Thomas Miller, M.D. ("Miller") stating that she had been accused of being argumentative, slapping a facility's certified dietary manager on the hand, and telling her she lacked the necessary skills.  (Doc. 59-1 at 7).  A pre-suspension hearing was held on April 20, 2017.  Miller accepted the hearing officer's recommendation and suspended Carastro for 7 days without pay or compensation, citing ADPH's Policy Against Workplace Threats and Violence (Policy No. 2008-002), Professional Conduct Policy (No. 2006-023), and Employee Handbook for Semi-Monthly Employees (No. 2016-002). (Doc. 62-6).

In May 2018, Carastro was assigned to a team of surveyors at Birmingham Nursing and Rehabilitation Center.  The facility's administrator, Mattie Banks ("Banks"), wrote a letter of complaint to the ADPH team leader, Donna Milstead ("Milstead"), regarding Carastro's conduct on the first day.  The letter stated that in examining the kitchen of the facility Carastro, asked facility employee Shanee Billingslea ("Billingslea") if someone took the Serve Safe certification test for her. (Doc. 59-5).  When Banks came into the kitchen, Carastro pointed her finger at Billingslea and then at Banks and referred to Billingslea as not having adequate training. (*Id.*).  The letter says that Banks told Carastro she did not have to be talked to that way. (*Id.*).  Banks characterized Carastro's conduct on

4

that day as rude and unprofessional and said that Carastro challenged the intelligence and integrity of the kitchen manager. (*Id.*)  Banks submitted a second letter of complaint that said that Carastro took the food temperature log notebook and prevented the cook from recording the temperatures and cited her for not recording food temperatures. (Doc. 59-6).  The second letter also complained about Carastro's use of a facility nurse for 3-4 hours each day, which prevented the nurse from doing her rounds or assisting any other surveyors. (*Id.*).  Banks ended the letter by stating that the surveyor caused unnecessary stress and disruption during an already stressful time. (*Id.*).

Pezent, the Director of the ADPH Long-Term Care Unit, states in an affidavit that based on the two complaints from the Birmingham facility, and the former complaints in Carastro's disciplinary history, she decided that it was in the best interest of ADPH to terminate Carastro. (Doc. 59-1).

On September 10, 2018, Carastro received a Notice of Pre-Termination Conference letter which notified her that ADPH was seeking Carastro's termination for inappropriate conduct during a May 2018 survey at Birmingham Nursing and Rehabilitation Center. (Doc. 62-11).  Carastro responded to the charges.  On or about October 9, 2018, Carastro received a letter notifying her that she was being terminated.

Carastro has identified statements made by ADPH employees which she contends evidence an intent to discriminate against her on the basis of her age, some of which are the subject of the Defendants' motion to strike.  Carastro offers the declaration of Gwen Davis ("Davis"), who worked at the ADPH from 2000 to 2018, who stated that she heard

other peer surveyors and supervisors say that Carastro needed to "go home" and was "too old" to be on the road or driving to surveys by herself. (Doc. 62-16 at 1).   Louise Hampton ("Hampton"), who worked at the ADPH from June 2014 to December 2019, said in a declaration that she had witnessed employees Milstead and Krista Lyons ("Lyons") say that Carastro was too old and needed to retire. (Doc. 62-17 at 3).   Sammy Bean ("Bean"), an employee of the ADPH from March 1996 to March 2019, said in a declaration that Pezent asked Bean to tell her things about Carastro, such as giving her information about Carastro making rounds. (Doc. 62-18 at 1).   Bean also said that Defendant Sadler said that Carastro needed to go home and was too old for the job. (*Id.* at 2).   Other evidence pointed to by Carastro includes deposition testimony by Ray Gipson ("Gipson"), a license and certification surveyor, who said that on one occasion in referring to Carastro, Pezent told him to "to stay out of it" and "let the Department handle it." (Doc. 62-2 at 23: 7–12). Gipson was asked in his deposition whether Pezent ever said that Carastro needed to retire, or that it was time for her to retire, or that she wanted Carastro to retire, to which he answered, "I think so," but thought that he overhead that comment. (*Id.* at 30: 1–13). Gipson also said that he heard someone in the department say that Carastro had Alzheimer's Disease and that he heard unnamed people in the department say several times that Carastro needed to retire. (*Id.* at 14: 16–15: 14).   Carastro also points to Gibson's deposition testimony that another ADPH employee named Cynthia Richardson told him that she did not like that Carastro had to drive alone to surveys and that it was unusual for a team member to be left behind. (*Id.* at 35: 14–36:7).   Carastro further points to the

6

deposition testimony of Felicia Williams ("Williams"), a long-term care supervisor, who began working for the ADPH in 1992, who when asked whether anyone had told her that Pezent said she wanted Carastro to retire or wished she would retire, Williams answered, "yes" and said that Lakesia Horne, a quality assurance director, had told her that Pezent said she wanted Carastro "to go." (Doc. 62-3 at 27: 7–22).[2]  Williams also said that Lyons, a surveyor, said that Carastro needed to go home. (*Id.* at 30:  8-18).  Williams further testified that Pezent said surveyors complained about Carastro's work, but Williams did not recall her saying Carastro was too old for the job. (*Id.* at 31: 5–32: 13).

## IV.  DISCUSSION

Before addressing the motion for summary judgment, the Court must first resolve the motion to strike and discern whether evidence objected to by the Defendants and relied on by Carastro in opposing summary judgment may be considered.

### A.  Motion to Strike

The Defendants seek to strike evidentiary materials provided by Carastro in opposition to summary judgment.  Specifically, the Defendants seek to strike portions of three declarations by other ADPH employees and Carastro's resumé which Carastro has relied on as evidence to support her age discrimination in termination claim.[3]  Carastro points out that a motion to strike applies to a pleading, not evidence.  The Defendants,

---

[2]  The Defendants have not objected to this testimony and so the Court has considered it as both Horne and Pezent may have sufficient authority for their comments to be non-hearsay.  FED. R. EVID. 801(d)(2).
[3]  As will be discussed more fully below, termination is the only employment action Carastro discusses in response to the motion for summary judgment. (Doc. 62 at 32).

however, have invoked Rule 56(c)(2), and so the Court will consider the pending motion as an objection to the evidence. *See, e.g., Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1291 (N.D. Ala. 2013) (treating the plaintiffs' motion to strike as an objection under Rule 56(c)(2)), *aff'd*, 767 F.3d 1124 (11th Cir. 2014).

### 1. *Declaration of Bean*

The Defendants object to the declaration of Bean, Exhibit 62-18, pursuant to FED. R. CIV. P. 37, arguing that Bean was never identified as a potential witness in Carastro's initial disclosures or in responses to discovery requests and, therefore, his declaration should not be considered. The Defendants also object to paragraphs four through six of Bean's declaration as conclusory, subjective, based on opinion, or irrelevant.

Carastro responds that she was under no duty to disclose Bean in supplemental disclosures because Bean was identified through discovery, such as responses to interrogatories and in Carastro's deposition. In support, Carastro cites to *Braggs v. Dunn*, 2017 WL 659169, at *12 (M.D. Ala. 2017). In that case, another judge of this Court reasoned that because the plaintiffs learned through discovery information about a witness, the testimony would not be stricken. *Id.*

In response to Defendants' interrogatory 20, Carastro referred to a survey in Selma, Alabama and a comment made by Bean about Pezent. (Doc. 66-1 at 15).[4]   Carastro also

---

[4] This evidence was attached to Carastro's opposition to the motion to strike and was not relied upon by Carastro in her opposition to summary judgment. The Court notes, however, that the substance of Bean's statement about Pezent as relayed by Carastro is, for reasons more fully discussed below, inadmissible hearsay. *See Zabren v. Air. Prods. & Chems., Inc*., 129 F.3d 1453, 1455 (11th Cir. 1997).

testified in her deposition that Bean said that Pezent had made age-based comments. (Doc. 62-1 at 44: 14-17).[5]  Based on these references to Bean in discovery, Bean's declaration is not due to be excluded on the basis that Bean was not included in supplemental disclosures.

Regarding the Defendants' additional objections to Bean's declaration, in *Rojas v. Florida*, 285 F.3d 1339, 1343, n.3 (11th Cir. 2002), in reviewing a grant of summary judgment, the Eleventh Circuit excluded testimony by a co-worker of a supervisor's discriminatory comment because comments by low-level supervisors repeating management's discriminatory comments are hearsay. *Id.* (citing *Zabren v. Air. Prods. & Chems., Inc*., 129 F.3d 1453, 1455-57 (11th Cir. 1997)).  In *Zabren*, the court explained that under the federal rules, "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." 129 F.3d 1455.  Excepted from the definition of hearsay, is "'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship,' which is deemed an admission by a party opponent." *Id.*  In that case, the plaintiff's testimony that his supervisor told him that unidentified superiors of the supervisor wanted a younger person was inadmissible double hearsay. *Id.* at 1456–57.  The court also explained, however, that if lower-level supervisors "furnished sworn affidavits—and had testified with respect to age-biased statements made by specifically identified, senior managers at the plant, their

---

[5] Carastro does not cite to this deposition testimony in support of her claim, but cites it in opposition to the motion to strike. In any event, a statement by Carastro as to what Bean said that Pezent said cannot be considered as it is hearsay.  *See Zabren*, 129 F.3d at 1455.

statements . . . might have been relevant and, therefore, permissible." *Id.* at 1457. Therefore, as to paragraphs four and six of the declaration wherein Bean himself recounts statements made to him by Pezent, the Court will consider those statements to the extent that they are relevant, and the objections are due to be OVERRULED.

The statements recounted by Bean of what Sadler said about Carastro, however, are subject to different analysis. In examining the admissibility of evidence of discriminatory animus as relevant evidence, the Eleventh Circuit has explained that a "decisionmaker's discriminatory comment which may not qualify as direct evidence of discrimination may constitute circumstantial evidence which could assist a jury in disbelieving the employer's proffered reasons for the adverse action." *Steger v. Gen. Elec. Co*., 318 F.3d 1066, 1079 (11th Cir. 2003). However, statements by non-decisionmakers do not satisfy the employee's burden. *Id.*

In this case, Carastro has offered statements by ADPH employees, including Bean, who are reporting what other co-employee surveyors and supervisors said about Carastro, but the undisputed evidence is that Pezent alone was the decisionmaker who decided that Carastro would be terminated, and that that determination was later upheld. (Doc. 59-1). It appears that Carastro has argued that the comments of other employees has some bearing on the issue of Pezent's intent, but the Eleventh Circuit has specifically rejected an argument by a plaintiff that comments by non-decisionmaker employees "demonstrate a culture conducive to age discrimination." *Mitchell v. USBI Co*., 186 F.3d 1352, 1355 (11th

Cir. 1999).[6]  In *Mitchell*, the court explained that evidence by non-decisionmakers is not considered as part of the circumstantial evidence of pretext because "comments by non-decisionmakers do not raise an inference of discrimination, especially if those comments are ambiguous." *Id.*  According to the Eleventh Circuit's interpretation of *Mitchell* in a later case, the court "did not accept the comments of either manager as to be even circumstantial evidence of discrimination." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 802 (11th Cir. 2005).  In *Rowell*, the court held that statement by a manager who was not a decisionmaker as to the plaintiff "cannot demonstrate discriminatory intent." *Id.*; *see also Holifield v. Reno*, 115 F.3d 1555, 1563–64 (11th Cir. 1997)("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.")(quotation and citation omitted), *abrogated on other grounds by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019); *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002)(considering a remark by a person who was the plaintiff's supervisor and whom the court assumed had input into the decision even though not the ultimate decisionmaker).

Therefore, a statement by Sadler to Bean, which Carastro contends evidences animus is not relevant, because there is no evidence before the Court that Sadler played

---

[6]   In her brief opposing summary judgment, Carastro has cited the Court to *Reeves v. C.H. Robinson Worldwide, Inc.*, 954 F.3d 798, 803 (11th Cir. 2010), for the proposition that language not directed at the plaintiff can establish a disparate treatment claim; however, the claim at issue in that case was a claim for hostile work environment, so the claim was not analyzed using the *McDonnell Douglas* framework.

any role in the decision to terminate Carastro. The objection is due to be SUSTAINED as to the statements by Sadler in Bean's declaration.

  2. *Carastro's Resumé*

The Defendants object to Exhibit 62-5, Carastro's resumé, as being immaterial and self-serving. The objection is due to be SUSTAINED to the extent that the Court will only consider the resumé to the extent that it is relevant in deciding the motion for summary judgment.

  3. *Declaration of Davis*

The Defendants object to Exhibit 62-16, the declaration of Davis, paragraphs 3-4, as containing conclusory allegations without supporting facts. These paragraphs include the statement that Davis heard other peer surveyors and supervisors say Carastro needed to go home and that she was too old to be on the road by herself. Davis also says that Carastro was sent on assignments by herself and that citations by Carastro were thrown out by the ADPH.

Because the declaration includes the statement that is based on personal knowledge, the Court does not agree that statements within paragraphs three and four that Carastro was sent by herself to do assignments and that citations written by Carastro were thrown out by ADPH are inadmissible conclusory allegations. These statements will be considered if relevant. However, Davis' statement that Carastro's "supervisors place[d] her in surveys with people they knew would come back and report on Mrs. Carastro" cannot be considered as it is speculative and not supported by facts.

The portions of Davis' declaration that report that other peer surveyors said that Carastro needed to "go home" and was "too old" to be on the road or driving to surveys by herself, (doc. 62-16), include statements by non-decisionmakers, so the objection is due to be SUSTAINED as to those comments. *Rowell*, 433 F.3d at 802; *Mitchell*, 186 F.3d at 1355.

### 4.  *Declaration of Hampton*

With respect to Exhibit 62-17, the declaration of Hampton, the Defendants object to paragraphs four through eleven on grounds including that the declaration contains conclusory allegations, subjective opinions, and immaterial statements.

Hampton's declaration is replete with statements she says she heard that were made about Carastro by other ADPH employees.  The objection is due to be SUSTAINED as to comments by non-decisionmaker employees offered as age-based comments about Carastro including statements by Milstead and Lyons that Carastro was too old and needed to retire.  *Rowell*, 433 F.3d at 802.  On the other hand, the statement that Carastro would drive to surveys alone may be considered where relevant to Carastro's pretext arguments based on different treatment.  Other statements, including that Carastro always let the team down and criticism of Carastro's citations, are not relevant as evidence of animus as there is no link to age or to Pezent.  The statements by Hampton that employee Milstead was frustrated with Hampton and "indicated" Hampton would be shunned by the team; Hampton's opinion that leaving Carastro to drive alone was a form of abuse due to her age; Carastro's statement to Milstead that she was being aggressive; and Hampton's statement

of Carastro's belief that she was being picked on because of her age, are improper opinion or speculation not based on facts and will not be considered. *See Hamilton v. Coffee Health Grp.*, 949 F. Supp. 2d 1119, 1128 (N.D. Ala. 2013)(reasoning that an opinion that discrimination motivated an employment action is not an admissible lay opinion).

    B.  Motion for Summary Judgment

    Carastro seeks to use circumstantial evidence to establish a claim of age discrimination.  An ADEA claim based on circumstantial evidence of discrimination is evaluated under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g., Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Id.*  Then the defendant must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.*   If the employer produces a legitimate, non-discriminatory reason for the adverse action, the plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext" in order to survive a motion for summary judgment. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir.2006).  To establish pretext, a plaintiff must show both that the reason given by the employer was false and that discrimination was the real reason. *See id.* The plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  The burden of persuasion always remains on the plaintiff in an

ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action. *Sims,* 704 F.3d at 1332.  A court must be careful not to allow employees to litigate whether they are good employees but must instead examine whether a proffered reason for termination is a coverup for a discriminatory decision.  *Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002).

The framework of *McDonnell Douglas*, however, is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A triable issue of fact may exist if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citation omitted).  A plaintiff may establish a "convincing mosaic" with "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks omitted).

The Defendants have moved for summary judgment as to claims based on termination, suspension, and change in terms and conditions of employment, each of which the Court will address in turn.

*1. Termination*

The Defendants concede that Carastro has a prima facie case of termination. The Defendants offer that the reason for Carastro's termination was that ADPH received serious formal complaints about Carastro's conduct from the Birmingham Nursing and Rehabilitation Center, LLC. Pezent has stated in an affidavit that she made the determination, which was upheld, that Carastro should be terminated based on two complaints from a Birmingham facility surveyed by Carastro and numerous formal complaints in Carastro's prior disciplinary history. (Doc. 59-1).

In response, Carastro argues that she has created a question of fact as to pretext because she did not engage in activity which warranted termination, she was treated differently from other similar employees, and there were age-based comments about her which evidence age animus. The Court begins with the evidence of age-based comments.

"Language not amounting to direct evidence, but showing some [discriminatory] animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.4 (11th Cir. 1998). In this case, Carastro does not contend that she has direct evidence, but in her brief points to the following as circumstantial evidence of age-conscious comments:[7] Gipson's deposition testimony that he heard someone in the department say that Carastro had Alzheimer's Disease, that he heard unnamed people in the department say several times

---

[7] Other comments pointed to by Carastro which are the subject of the Defendants' objections and, as previously discussed, cannot be considered as evidence of animus on the part of Pezent are not re-stated here.

16

that Carastro needed to retire, and that he thought he overheard Pezent say either that Carastro needed to retire or that Pezent wanted her to retire (doc. 62-2 at 14: 16—15: 14; 30: 1-13); Williams' statement that she witnessed Lyons say that Carastro just needed to go home (doc. 62-3 at 30 8-18); and Williams' testimony when asked whether Pezent ever mentioned that she wanted Carastro to retire, that Horne said that Pezent said that Carastro needed to go (*id.* at 27: 13-20).

As discussed above in connection with the Defendants' evidentiary objections, only evidence of the decisionmaker's comments can be considered as evidence of discriminatory intent. *Steger*, 318 F.3d at 1079; *Rowell*, 433 F.3d at 802. Given the undisputed evidence before the Court that Pezent alone made the decision to terminate Carastro, which was later upheld, only comments by Pezent will be considered in evaluating Carastro's circumstantial evidence.

The comments attributed to Pezent—Gipson's statement that he thought he overheard Pezent say Carastro needed to retire or that Pezent wanted her to retire and Williams' testimony when asked whether Pezent ever mentioned that she wanted Carastro to retire, that Horne said that Pezent said that Carastro needed to go—are not as directly related to age as comments which courts have found could be viewed as ageist comments. *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204–05 (11th Cir. 2010) (comments by a supervisor that a plaintiff is "too old" can be circumstantial evidence of age discrimination). A reasonable person could, however, view the comments as being

based on age, therefore, the Court will consider those comments as part of the pretext analysis.

Evidence of discriminatory animus is not sufficient to establish pretext without rebutting each of the proffered reasons of the employer. *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007).   In *Crawford*, in an attempt to establish pretext, the plaintiff offered evidence of a statement indicating a retaliatory animus, but he did not offer any evidence to rebut the non-discriminatory reasons for firing him.   *Id.* The Eleventh Circuit Court of Appeals explained that "Crawford erroneously argues that evidence of a discriminatory animus allows a plaintiff to establish pretext without rebutting each of the proffered reasons of the employer." *Id.*   The court held that "[b]y failing to rebut each of the legitimate, nondiscriminatory reasons of the City, Crawford has failed to raise a genuine issue of material fact about whether those reasons were pretext for discrimination." *Id.*; *see also Ross*, 146 F.3d at 1292 (explaining that evidence of racially biased comments made by two decisionmakers had to be considered "in conjunction with the entire record"); *Dixon v. Nat'l Sec. of Alabama, Inc.,* 2020 WL 2312816, at *13–14 (M.D. Ala. 2020)(finding that comments which did not rise to the level of direct evidence of discrimination could not establish pretext in the absence of a contradiction in the employer's proffered legitimate reasons for its actions).

The Eleventh Circuit recently applied this analysis to an age discrimination claim, albeit in an unpublished opinion. *See Melvin v. Fed. Express Corp.*, 814 F. App'x 506 (11th Cir. 2020).   In *Melvin*, the plaintiff contended that he had presented a convincing mosaic

of discrimination through evidence of discriminatory comments and pretext. *Id.* at 512. The evidence of ageist comments came from a one-on-one conversation during which the plaintiff's supervisor asked when he would retire, asked whether he could keep up given his age, and said the plaintiff was too old and should let young employees do the job. *Id.* at 510.  The court acknowledged that the supervisor's ageist comments were probative of whether age motivated the decision to terminate his employment.  *Id.* at 513.  The court then explained, however, that "the comments alone are not sufficient to meet . . . the burden of creating a triable issue of discriminatory intent . . . ."  *Id.* Instead, they had to be considered along with other evidence of pretext to determine whether there was a triable issue. *Id.* at 514.  The court concluded that there was insufficient evidence to establish "but for" causation because the plaintiff, while he had presented evidence that his supervisor made ageist remarks to him within six months of his termination, did not establish pretext for the termination decision. *Id.* at 519.

Accordingly, the Court turns to the evidence of pretext offered by Carastro.

Carastro attempts to rebut the proffered reason for her termination in two ways:  she questions the reason given because she disputes that her conduct violated ADPH policy, and she says that she was treated differently from other employees.

A plaintiff must do more than subjectively disagree with her employer's assessment of her performance to establish pretext. *See Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000).  The reason articulated in this case is that Carastro was terminated because she received facility complaints about her work performance.  It appears to the Court that

this is analogous to a situation where an employee is terminated based on reported conduct which the employer concludes constitutes a work-rule violation.  *See Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1363 (11th Cir. 1999).  In the Eleventh Circuit, a "'work rule' defense is arguably pretextual when a plaintiff submits evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated."  *Id*.

With respect to the first prong, "the employee must point to evidence which raises a question as to whether the decisionmaker, in fact, knew that the violation did not occur and, despite this knowledge, fired the employee based upon the false premise of an alleged work rule violation."  *Sweeney v. Ala. Alcoholic Beverage Control Bd*., 117 F. Supp. 2d 1266, 1273 (M.D. Ala. 2000).  The question is "whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about" her as a cover for discrimination. *Alvarez v. Royal Atlantic Developers*, 610 F.3d. 1253, 1267 (11th Cir. 2010).

Carastro offers a memorandum which she submitted through her attorneys in response to the ADPH's Department Charges, dated October 3, 2018. (Doc. 62 at 6 & Doc. 62-12).  Carastro's response to the Department Charges is not sworn, but is simply a memorandum, similar to a brief filed in court.  Therefore, this Court must conclude that she has not disputed the facts of the allegations by the facility against her with sufficient evidence to create a genuine issue of material fact.  *See Celotex Corp*., 477 U.S. at 324 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds

of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.").  Even if the Court were to consider the memorandum as evidence, however, in it, Carastro admits to several of the facts complained of by the facility; for example, that she asked Billingslea about her Serve Safe certification and that she cited the cook for not recording temperatures in a timely manner. (Doc. 62-12 at 2). Furthermore, disputing the facts is not sufficient to establish pretext by itself, because an employer's mistaken belief about an employee's performance does not establish pretext so long as the employer honestly believed her performance was unsatisfactory.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991).

Carastro argues in her brief that, accepting the substance of the complaints made by the Birmingham facility to the ADPH, the actions described in the complaints do not rise to the level of inappropriate behavior as listed in the ADPH's policy on survey etiquette. ADPH policy provides that employees must serve the public with respect, concern, courtesy, and responsiveness, and that employees must show citizens how to avoid mistakes in applying for Department assistance or in dealing with state government. (Doc. 59-12).  Carastro presents evidence to show that asking Billingslea about her certification and interviewing facility staff were within her job duties, therefore, her actions were appropriate.  Carastro further contends that taking the notebook from the cook was consistent with ADPH policy because the temperatures could not be recorded in a timely

manner at the time she took the notebook and, therefore, should not have been recorded at all.

The Defendants argue in response that Carastro has not disputed the facts and has done no more than attempt to substitute her judgment for that of the Defendants.

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. This Court must conclude that a reasonable employer might be motivated to terminate an employee who, after having received discipline for facility complaints in the past, received two complaints about the employee's professional conduct, particularly given the unrefuted evidence that the ADPH receives a total of approximately three formal written complaints on surveyor conduct per year. (Doc. 59-1 at 4). The Court concludes, therefore, that in the absence of sufficient evidence to raise a question as to whether Pezent, in fact, thought that the conduct described in the complaints occurred, Carastro has failed to create a sufficient issue of fact. *Sweeney*, 117 F. Supp. 2d at 1273.[8]

---

[8] As earlier noted, although Pezent has stated in affidavit that her determination that Carastro should be terminated was based on the two complaints of the facility and the complaints in Carastro's disciplinary history, (doc. 59-1), the notice of pre-termination conference went a step further and cited to ADPH policies violated by Carastro. (Doc. 59-8). Upholding the termination as a violation of policy could be viewed as a subjective determination. Subjective reasons are sufficient, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001); *see also Rojas*, 285 F.3d at 1342 (finding no pretext where there was a discriminatory remark by the decisionmaker and a ground for termination was the employee's poor work performance). In addition, the decision that policies had been violated was supported by objective evidence in the form of the facility's complaint. *See Rojas*, 285 F.3d at 1343 (holding that complaints from a testing lab and reports from employees other than the decisionmaker were objective evidence of the employee's poor performance). Therefore, the Court concludes that the mere fact that a subjective reason was relied on in upholding the termination decision is not evidence of pretext.

With respect to the second method of disputing a violation of a work rule, Carastro does not point to evidence that other employees were not disciplined for receiving the same type or number of complaints as she. Instead, in her brief, under a heading of "Carastro was treated differently than other surveyors," Carastro points to evidence of treatment that she contends shows she was treated differently.[9] This evidence includes that she was told she could not return to work after surgery because she had to stop every two hours, whereas nurses were allowed to work wearing boots after foot surgery; Pezent told Gipson to "stay out of it" and let the department handle it; Pezent asked Gipson to report on Carastro's conduct to her; Pezent told Bean not to talk to Carastro; and that Carastro was required to drive by herself for surveys. As to this last point, Carastro has presented evidence from employees who offered the opinion that Carastro should not have been left behind but should have traveled with the survey team.

With respect to the evidence that Carastro had to drive by herself to surveys, the Defendants argue that Carastro's characterization of her treatment is inaccurate and that she has failed to demonstrate that any similarly situated surveyors were treated differently than she. Attached to Pezent's affidavit is a list of surveyors whom she states in her affidavit traveled alone. (Doc. 59-18). Pezent explains in her affidavit that if a survey was not completed, the rest of the team might move on, while one employee remained to finish

---

[9] Carastro includes under this heading evidence that a surveyor told a supervisor that the supervisor's criticism of Carastro was verbal abuse, that a supervisor said Carastro let them down, and that superiors placed her in surveys with people who would report on her. As discussed above in resolving the evidentiary objections, the Court will not consider inadmissible evidence, and so has not re-stated this evidence.

the task. (Doc. 59-1 ¶16).  Based on the affirmative evidence that other surveyors traveled alone, the Court cannot conclude that the evidence Carastro presents is sufficient to create a question of fact as to whether similarly situated employees were treated differently than she in driving to surveys alone.

Pezent also states in her affidavit that it is within the employee's discretion when the employee can get out of the car and walk around. (*Id.*).  The Court cannot conclude, therefore, that Carastro's deposition testimony that nurses were allowed to return to work after surgery, whereas she was not, is sufficient to demonstrate that Carastro, a surveyor, was similarly situated to those nurses.

Evidence that Pezent asked employees to report on Carastro's conduct or directed them not to talk to Carastro, to the extent that it is admissible, is not offered as evidence of animus, but instead is offered as evidence of treatment of Carastro.  There is no evidence, however, to show that Carastro was treated differently from other similarly situated employees.  *See Warren v. Harvey*, 2006 WL 8431837, at *4 (N.D. Ga. 2006)(finding no evidence of pretext where the plaintiff "adduced no evidence . . . that Plaintiff was singled out among other similarly situated individuals.").  In addition, this evidence does not tend to undermine the legitimacy of the articulated reason for Carastro's termination because the evidence before the Court is that the conduct upon which Carastro's termination was based was reported by a surveyed facility, not another ADPH employee.

A claim of age discrimination requires proof that age was the "but for" reason for the employment action.  *Gogel v. Kia Motors Mfg. of Georgia, Inc*., 967 F.3d 1121, 1136

(11th Cir. 2020).  The evidence of age-based comments by the decisionmaker, Pezent, is weak both because the comments are only ambiguously about age and because there is little evidence as to the timing or context of these comments. *See Damon*, 196 F.3d at 1362 (examining the substance, timing, and context of comments in determining the strength of the discriminatory animus).  Carastro has failed to rebut the reason given for her termination.  The Court concludes, therefore, that considering all of the admissible evidence in a light most favorable to the non-movant, Carastro has failed to create genuine issue of fact to preclude summary judgment under either a *McDonnell Douglas* or a convincing mosaic of discrimination theory.  *See Melvin*, 814 Fed. App'x at 512, n.3 (upholding summary judgment and analyzing pretext under a convincing mosaic theory); *see also Bowen v. Jameson Hospitality, LLC*, 214 F. Supp. 2d 1372, 1383–85 (S.D. Ga. 2002)(finding that employer's racists comments were circumstantial evidence of pretext but insufficient where plaintiff failed to present enough evidence that defendant did not actually believe plaintiff's productivity to be too low or did not honestly find her to be insubordinate).  Summary judgment is due to be GRANTED as to the termination claim.

    *2.  Suspension*

    The Defendants have moved for summary judgment on a suspension claim arising from Carastro's suspension in 2017.  Throughout her brief in opposition to summary judgment, Carastro refers to her "claim of age discrimination," in the singular. (Doc. 62 at 14).  Carastro notes that the Defendants concede that she has a prima facie case of suspension and termination on the basis of age, but Carastro does not address a suspension

claim as a claim separate from her termination claim. (Doc. 62 at 21).  Furthermore, she argues only that she has presented "sufficient evidence to discredit ADPH's proffered reasons for her termination . . . ." (Doc. 62 at 32).  Therefore, the Court will not further address a suspension claim in this case.  *See, e.g., Mosley v. Alabama Unified Jud. Sys., Admin. Off. of Cts.*, 562 F. App'x 862, 866 (11th Cir. 2014) ("The district court did not err in determining that Mosley abandoned any grounds of racial discrimination by failing to address them in her opposition brief to the motion for summary judgment.").  Alternatively, summary judgment is due to be GRANTED on the basis that Carastro has failed to present evidence which establishes pretext as to the reason articulated for her suspension in 2017.

### 3. Terms and Conditions of Employment

The Defendants identify eight challenged terms and conditions of employment which they group into categories and as to which they move for summary judgment.  As earlier noted, Carastro's brief submitted in opposition to the motion for summary judgment refers only to her termination claim (doc. 62 at 14), and argues that Carastro has provided sufficient evidence to discredit proffered reasons for termination (*id.* at 32), but does not address the other instances of treatment identified in the Defendants' brief as separate claims. Therefore, to the extent that any claim for age discrimination was advanced on a basis other than termination, the motion for summary judgment is due to be GRANTED as to that claim. *See id.*

## V.   CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.   The motion to strike (doc. 64) is GRANTED in part and DENIED in part to the extent that the Court has construed the motion as objections to evidence which have been overruled in part and sustained in part as set out above.

2.   The motion for summary judgment (doc. 58) is GRANTED.

A separate Final Judgment will be entered.

DONE this 30th day of August, 2021.


/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE